IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIGUEL DAUMONT, on behalf of plaintiff and a class, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC. and ENCORE CAPITAL GROUP, INC., | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT – CLASS ACTION

1. Plaintiff Miguel Daumont brings this action to secure redress for improper debt collection practices by defendants. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

## JURISDICTION AND VENUE

3. The Court has jurisdiction under 15 U.S.C. §1692k, 28 U.S.C. §1331, and 28 U.S.C. §1337.

4. Venue and personal jurisdiction in this District is proper because this action concerns the filing of collection lawsuits in this District by Midland Funding, LLC, at the direction of Midland Credit Management, Inc.

## PARTIES

5. Plaintiff is a resident of Cook County, Illinois.

6. Defendant Midland Funding, LLC ("Midland Funding") is a limited liability company organized under Delaware law with principal offices at 3111 Camino Del Rio North,

1

Suite 103, San Diego, CA 92108. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

7. Defendant Midland Credit Management, Inc. ("MCM"), is a Kansas corporation with principal offices at 3111 Camino Del Rio North, Suite 1300, San Diego, CA 92108. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

8. Defendant Encore Capital Group, Inc. ("Encore Capital") is a corporation organized under Delaware law with principal offices at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

9. Midland Funding and MCM are wholly-owned subsidiaries of Encore Capital and share common management with Encore Capital. For example, Kenneth A. Vecchione is president of Encore Capital and MCM.

10. Midland Funding and MCM operate in concert with one another, and under the direct supervision and control of Encore Capital, to purchase and collect consumer debt on a massive scale.

11. Encore Capital and its subsidiaries are one of the largest debt buyers and collectors in the United States. From 2009 to 2015, Encore's estimated gross collections totaled over $5 billion, with net income of more than $384 million.

12. Defendants send collection letters by United States mail, call consumers from call centers in the United States, India, and Costa Rica, furnish consumer information to credit bureaus, and sues consumers in state courts across the country. The vast majority of the debt collection lawsuits defendants file go unanswered by the consumers and result in default judgments.

13. Defendants purchase or claim to purchase portfolios of old consumer debt from some of the nation's largest consumer finance and telecommunications companies, and from other debt buyers, for pennies on the dollar. These debts primarily consist of charged-off

consumer credit card and telecommunications debts, obtained at various points in time after default. From 2009 to 2015, Encore states in SEC filings that it paid about $4 billion for approximately 60 million consumer accounts with a total face value of $128 billion.

14. Encore determines what debts to obtain and overall collection strategies. Encore also raises money for the collection activities at issue on public securities markets.

15. MCM directs the collection of the debts, including through litigation, and gives instructions to attorneys such as Kevin W. Mortell.

16. Midland Funding is the entity claimed to hold title to the debts.

17. A majority of defendants' U.S. collection income comes from "legal collections." (Annual report of Encore Capital on SEC Form 10-K for year ending December 31, 2015, original page 39)

18. Each defendant is a "debt collector" as defined in the FDCPA, 15 U.S.C. §1692a(6).

## **FACTS**

19. Defendants file thousands of debt collection complaints against Illinois consumers through attorney Kevin W. Mortell. (Defendants use other firms as well, but this case concerns the Mortell complaints.)

20. These alleged debts are for personal, family or household purposes and not business purposes.

21. On April 7, 2015, defendants filed one such complaint against Miguel Dumont. A copy of the complaint is attached as Appendix A.

22. The plaintiff in the complaint is Midland Funding.

23. Although not listed as an employee on Appendix A, Mortell is on information and belief an employee of MCM.

24. The telephone number in the signature block on Appendix A, 866-300-8750, is answered "Midland Credit Management." On information and belief, it is an MCM office

outside Illinois. It is not the number normally used by Mortell, which is listed on the ARDC website as 847-397-9790.

25. Callers to 847-397-9790 hear a voicemail message inviting the caller to also contact a staff attorney at 847-303-0512, or a paralegal at 847-303-3099; the latter number is answered "Midland's Illinois office."

26. On information and belief, MCM actually handles all paperwork connected with the Mortell filings, and all calls to the 866 telephone number on the complaint are directed to non-attorney MCM personnel.

27. The complaint filed against plaintiff in Circuit Court sought to collect an alleged credit card debt. According to the complaint, the original creditor was FIA Card Services, N.A.

28. Any such debt would have been incurred for personal, family or household purposes and not for business purposes.

29. The lawsuit against plaintiff was set for trial on January 26, 2016. On that date, Midland Funding had no witnesses or evidence. The lawsuit was dismissed with prejudice. There was no settlement or agreement, other than that Midland Funding would dismiss with prejudice instead of nonsuiting and returning plaintiff's appearance fee.

30. Plaintiff was required to pay an appearance fee and spend time and money and retain counsel to defend the lawsuit.

31. The complaint against plaintiff and the other complaints defendants filed through Mortell each contained the following statements, which had nothing to do with any cause of action asserted:

> 6. Plaintiff owns portfolios of consumer receivables, which it attempts to collect. When working with individual consumers, plaintiff and its affiliates generally attempt to contact consumers like defendant through several means, all in an effort to establish contact and to resolve the underlying obligation. In doing so, plaintiff attempts to assess each consumer's willingness to pay, through phone calls, letters or other means. Plaintiff attempts to exclude consumers from its collection efforts where plaintiff believes those consumers are facing extenuating circumstances or hardships that would prevent them from making any payments.
>
> 7. When Midland contacts consumers, it strives to treat consumers with respect,

compassion and integrity. Plaintiff works with consumers in an effort to find mutually-beneficial solutions, often offering discounts, hardship plans, and payment options. Plaintiff's efforts are aimed at working with consumers to repay their obligations and to attain financial recovery. Plaintiff strives to engage in dialogue that is honorable and constructive, and to play a positive role in consumers' lives.

8. Despite plaintiff's efforts to reach consumers and resolve the consumer's obligations, only a small percentage of consumers choose to engage with plaintiff. Those who do are often offered discounts or payment plans that are intended to suit their needs. Plaintiff would prefer to work with consumers to establish voluntary payment arrangements resulting in the resolution of any underlying obligations.

9. However, the majority of plaintiff's consumers ignore calls or letters, and some simply refuse to repay their obligations despite an apparent ability to do so. When this happens, Midland must decide then whether to pursue collection through legal channels, including litigation like the present action against defendant. Although the account is now in litigation, plaintiff remains willing to explore a mutually-beneficial solution through voluntary payment arrangements, if possible.

32. The purpose and effect of the statements in defendants' collection complaints is to represent that there are no legitimate disputes concerning the debts and that consumers are willfully refusing to pay clear obligations without reasonable cause. Such statements are both placed in public records accessible to all and delivered to consumers.

33. "Shaming" consumers by means of such statements violates 15 U.S.C. §§1692d and 1692e. *Beider v. Retrieval Masters Creditors Bureau, Inc.*, 14cv6563, 2015 WL 7454119 (E.D.N.Y., Nov. 24, 2015) (sustaining complaint based on letter which stated, "You may believe that [creditor] will eventually forget about the $187.20 you owe for laboratory tests they performed. However, it is our responsibility to make sure that neither our client nor [sic] you forgets this debt. There is no longer any justification for not paying for the laboratory services that you received. Withholding payment is not acceptable.").

34. The impact of the statements complained of are reinforced by the fact that the collection complaint improperly conveys that the allegations are being made by an outside law firm, when in fact Kevin W. Mortell is an employee of Defendants.

35. The statements complained of also gratuitously represent to the unsophisticated consumer that they do not have any valid defense to the claim against them.

36. Section 1692d provides:

> **A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
>> **(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.**. . . .

37. Here, instead of publishing a *list* of "deadbeats," defendants accuse individual consumers of willfully refusing to pay debts without good reason in form documents, and place these accusations in public records. A list of persons against whom such accusations have been made can be retrieved using software on the Circuit Court's website or provided by the Circuit Court's database vendor, US Courts.

38. Section 1692e provides:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

>> **(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer. . . .**
>
>> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

39. The statements in the collection complaints are untruthful. In fact, many consumers dispute the debts, defendants' title to the debts, the amounts claimed, or all of the foregoing.

40. For example, the complaint filed against plaintiff sought to collect an alleged FIA Card Services/ Bank of America credit card. (These are two related entities.) In 2014, the Consumer Financial Protection Bureau ("CFPB") entered into a consent order with FIA and Bank of America after alleging that they imposed unauthorized charges on consumers. *In the Matter of Bank of America, N.A.; and FIA Card Services, N.A.*, 2014-CFPB-0004 (Appendix B). The banks were ordered to pay $727 million in consumer relief.

41. Similar orders have been entered against other credit grantors whose receivables defendants seek to collect.

42. In addition, in September 2015 the CFPB entered into a consent order with defendants to resolve allegations of improper conduct in collecting consumer debts, including the filing and prosecution of time-barred lawsuits and the filing and prosecution of lawsuits knowing that no evidence could be obtained to support them. *In the Matter of Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc. and Asset Acceptance Capital Corp.,* 2015-CFPB-0022 (Appendix C).

43. Some collection lawsuits filed by defendants and their affiliates in Illinois have been filed beyond the statute of limitations. *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013).

44. When defendants purchase debt portfolios, they typically receive an electronic spreadsheet, sometimes referred to as a "data file," from the seller that includes information about the consumer and the debt, such as name, address, social security number, the purported amount of the debt, the contract interest rate, and dates of origination and default.

45. Defendants' purchase agreements with debt sellers have typically limited, in varying degrees, the seller's responsibility for the accuracy and validity of the accounts in question. For example, a purchase agreement between Midland Funding and one large credit card issuer stated that the account balance for over 35,000 individual accounts being sold in that transaction was an approximation:

> Current balance means the approximate unpaid balance. [Midland Funding] acknowledges that the figure provided as the current balance for any loan may include interest, accrued or unaccrued, costs, fees, and expenses, and it is possible that the figure provided as the current balance for any loan may not reflect credits for payments made by or on behalf of any obligor prior to the cutoff date.

46. Based on a computer search of court records, during the year prior to the filing of this action, defendants filed over 2,000 complaints containing the statements complained of herein against residents of Cook County alone. Other such complaints were filed against

consumers in other Illinois counties. Plaintiff estimates the total number of such complaints as in excess of 3,000.

47. In all such cases:

    a. The nominal plaintiff is Midland Funding;

    b. An employee or agent of MCM filed an affidavit;

    c. MCM answered inquiries directed to Mortell.

    d. MCM provided instructions to Mortell regarding the filing and prosecution of the case.

## COUNT I – FDCPA

48. Plaintiff incorporates paragraphs 1-47.

49. Defendants engaged in unfair and deceptive acts and practices, in violation of 15 U.S.C. §§1692e, 1692e(4), 1692e(10), and 1692d, by engaging in the conduct set forth above.

## CLASS ALLEGATIONS

50. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

51. The class consists of (a) all individuals (b) sued in Illinois by Midland Funding (c) using a complaint containing the allegations in paragraphs 6-9 of Appendix A, (d) which complaint was filed or served any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

52. On information and belief, based on a search of electronic court records, the class is so numerous that joinder of all members is not practicable. Plaintiff estimates the number of class members as in excess of 3,000 but probably less than 10,000.

53. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether the statements complained of violate the FDCPA.

54. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

55. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

56. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights;

    c. Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendants for:

    i. Statutory damages;

    ii. Attorney's fees, litigation expenses and costs of suit;

    iii. Such other and further relief as the Court deems proper.

                                                    s/Daniel A. Edelman
                                                    Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/Daniel A. Edelman  
Daniel A. Edelman